[No. F054344. Fifth Dist. Sept. 4, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
JASON JACOB CARDONA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the Facts and parts I, II, and III of the Discussion.

**COUNSEL**

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, David Andrew Eldridge and Heather S. Gimle, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ARDAIZ, P. J.**—Appellant Jason Jacob Cardona stands convicted, following a jury trial, of forcible rape (Pen. Code, § 261, subd. (a)(2); counts 1 & 5), forcible lewd act on a child under age 14 (*id.*, § 288, subd. (b)(1); counts 2 & 6), forcible oral copulation (*id.*, § 288a, subd. (c)(2); counts 3 & 7), and sexual penetration by force (*id.*, § 289, subd. (a)(1); count 4). Counts 1

through 4 involved crimes against S., while counts 5 through 7 involved crimes against A., and the jury further found, as to all but count 4, that the offenses were committed against multiple victims. (*Id.*, § 667.61, subd. (e)(5).) Appellant was between 16 and 18 years of age during much of the period of time in which the crimes were alleged to have occurred.[1] Concluding that appellant was not a fit and proper subject to be dealt with under juvenile court law, the trial court sentenced appellant to a total unstayed term of 30 years to life in prison, and this appeal ensured. For the reasons that follow, we will affirm.

## FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

## I–III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV

## FINDING OF JUVENILE COURT UNFITNESS

A.  *Background*

The parties stipulated that appellant's date of birth was September 6, 1982. The original information alleged some counts occurring as early as November 1, 1997, while the first amended information alleged some counts occurring as early as May 30, 1992. As set out in the second amended information (upon which the jury returned its verdicts), the offenses charged with respect to S. were alleged to have occurred between September 6, 1998, and May 29, 2001, while the offenses charged concerning A. were alleged to have occurred between September 6, 1998, and November 1, 2002. Thus, appellant was between 16 and 18 years old (hence, a juvenile) during a portion of the periods in which the crimes were committed, having turned 18 on September 6, 2000. In filing the second amended information in the midst of trial, the prosecutor stated her belief that, given the amendment of dates so that

---

[1] The facts are not pertinent to the published portion of this opinion, which addresses the application of *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*) to the determination of fitness to be sentenced as an adult.

*See footnote, *ante*, page 516.

appellant was 16 or older at the time of the alleged offenses, the People could "direct file" the charges under Welfare and Institutions Code section 707 and Proposition 21.[8] Appellant did not object to the amendment of the information or to its being filed directly in adult court.

Prior to sentencing, the People filed a written motion for an adult sentencing. Although contending that provisions enacted in 2000 pursuant to Proposition 21 permitted the direct filing of appellant's offenses in adult court, they observed that the court might, out of an abundance of caution and because some of the offenses antedated enactment of the Proposition 21 statutory amendments, conduct a fitness hearing. The People argued that appellant's failure to object to the direct filing waived any objection to his status, and that he was unfit to be dealt with under the juvenile court law in any event.

The court opted to hold a fitness hearing prior to sentencing. Appellant did not object to this procedure, and did not present any evidence. Following argument concerning the probation officer's fitness report, the trial court found appellant was alleged to be a person described in section 602, and that he was 16 years of age or older at the time of the alleged offenses. Although finding appellant to be a fit and proper subject to be dealt with under the juvenile court law with regard to his prior delinquent history and the success of previous attempts by the juvenile court to rehabilitate him, inasmuch as he had no prior juvenile history or record, the court found him unfit with respect to the degree of criminal sophistication of the offense, whether he could be rehabilitated prior to expiration of the juvenile court's jurisdiction, and the circumstances and gravity of the offenses. Accordingly, the trial court ruled that appellant was not a fit and proper subject to be dealt with under the juvenile court law, and instead was to be sentenced under the general law of California.

Appellant now contends that under *Apprendi, supra,* 530 U.S. 466, and its progeny, "the facts of juvenile unfitness that increased the penalty for the crimes beyond a juvenile court disposition to a prescribed adult maximum sentence had to [be] submitted to a jury and proven beyond a reasonable doubt," instead of determined by the sentencing judge. To permit an increase in his authorized punishment contingent upon the finding of unfitness facts, he says, violated his Sixth Amendment right to jury trial. Appellant further contends, based on *Kent v. United States* (1966) 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045] and its progeny, that he was entitled to a hearing *before* juvenile court jurisdiction was rejected and his case was transferred to the

---

[8] Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

superior court criminal process, and that the procedures employed in this case violated his rights under the due process clause of the Fourteenth Amendment.

Respondent disagrees with both arguments, claiming California law does not make any facts "legally essential" to appellant's prosecution as an adult, and that the United States Supreme Court has made clear that the Sixth Amendment's jury trial rights are to be expanded only to those issues that historically have been the subject of a jury trial. Respondent further says appellant forfeited his due process claim by failing to raise it in the trial court; moreover, because the charges against appellant spanned a time period after the passage of Proposition 21, the prosecutor was required to file them in a court of criminal jurisdiction, and appellant received a fitness hearing in any event.

We conclude *Apprendi* and its progeny do not apply. We further conclude appellant forfeited any due process claim by failing either to raise it, or to object to the procedures used, in the trial court.

## B. *Analysis*

### 1. *The statutory framework*

The prosecutor's apparent uncertainty over what procedure to follow is understandable: The relevant statutes underwent significant revisions over the course of the timeframe alleged in the second amended information.

In 1998, former section 602 placed every juvenile alleged to have committed a crime under the jurisdiction of the juvenile court.[9] Former section 707 allowed the district attorney to move to have a minor 16 years of age or older found unfit to be dealt with under the juvenile court law. If the minor was not alleged to have committed an offense listed in subdivision (b) of the statute, the juvenile court could find him or her unfit following investigation, consideration of the probation officer's report, and hearing (former § 707, subd. (a)); if the minor was one who, like appellant, was alleged to have committed an offense listed in subdivision (b) of the statute, the minor was

---

[9] As it read in 1998, former section 602 provided in its entirety: "Any person who is under the age of 18 years when he violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court." (Stats. 1976, ch. 1071, § 12, p. 4819.)

presumed to be unfit (former § 707, subd. (c)).[10] Effective March 8, 2000, the electorate enacted the initiative measure known as Proposition 21. As

[10] Section 707 was amended several times in 1998, in ways not applicable to appellant. In pertinent portion, it read:

"(a) In any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of any criminal statute or ordinance except those listed in subdivision (b), upon motion of the petitioner made prior to the attachment of jeopardy the court shall cause the probation officer to investigate and submit a report on the behavioral patterns and social history of the minor being considered for a determination of unfitness. Following submission and consideration of the report, and of any other relevant evidence which the petitioner or the minor may wish to submit, the juvenile court may find that the minor is not a fit and proper subject to be dealt with under the juvenile court law if it concludes that the minor would not be amenable to the care, treatment, and training program available through the facilities of the juvenile court, based upon an evaluation of the following criteria: [¶] (1) The degree of criminal sophistication exhibited by the minor. [¶] (2) Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction. [¶] (3) The minor's previous delinquent history. [¶] (4) Success of previous attempts by the juvenile court to rehabilitate the minor. [¶] (5) The circumstances and gravity of the offense alleged in the petition to have been committed by the minor.

"A determination that the minor is not a fit and proper subject to be dealt with under the juvenile court law may be based on any one or a combination of the factors set forth above . . . .

"(b) Subdivision (c) shall be applicable in any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of one of the following offenses: [¶] . . . [¶] (4) Rape with force or violence or threat of great bodily harm. [¶] . . . [¶] (6) Lewd or lascivious act as provided in subdivision (b) of Section 288 of the Penal Code. [¶] (7) Oral copulation by force, violence, duress, menace, or threat of great bodily harm. [¶] (8) Any offense specified in subdivision (a) of Section 289 of the Penal Code. [¶] . . . [¶]

"(c) With regard to a minor alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of any of the offenses listed in subdivision (b), upon motion of the petitioner made prior to the attachment of jeopardy the court shall cause the probation officer to investigate and submit a report on the behavioral patterns and social history of the minor being considered for a determination of unfitness. Following submission and consideration of the report, and of any other relevant evidence which the petitioner or the minor may wish to submit the minor shall be presumed to be not a fit and proper subject to be dealt with under the juvenile court law unless the juvenile court concludes, based upon evidence, which evidence may be of extenuating or mitigating circumstances, that the minor would be amenable to the care, treatment, and training program available through the facilities of the juvenile court based upon an evaluation of each of the following criteria: [¶] (1) The degree of criminal sophistication exhibited by the minor. [¶] (2) Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction. [¶] (3) The minor's previous delinquent history. [¶] (4) Success of previous attempts by the juvenile court to rehabilitate the minor. [¶] (5) The circumstances and gravity of the offenses alleged in the petition to have been committed by the minor.

"A determination that the minor is a fit and proper subject to be dealt with under the juvenile court law shall be based on a finding of amenability after consideration of the criteria set forth above, and findings therefor recited in the order as to each of the above criteria that the minor is fit and proper under each and every one of the above criteria. In making a finding of fitness, the court may consider extenuating or mitigating circumstances in evaluating each of the above criteria . . . ." (Stats. 1997, ch. 910, § 2, p. 6527.)

amended thereby, section 602 mandated the prosecution of specified minors in adult court.[11] Section 707 permitted the district attorney to directly file charges in adult court against other specified minors.[12]

---

[11] Section 602 underwent further, nonsubstantive changes in 2001. As amended effective March 8, 2000, it provided, in pertinent part:

"(a) Except as provided in subdivision (b), any person who is under the age of 18 years when he or she violates any law of this state . . . is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court.

"(b) Any person who is alleged, when he or she was 14 years of age or older, to have committed one of the following offenses shall be prosecuted under the general law in a court of criminal jurisdiction: [¶] . . . [¶] (2) The following sex offenses, if the prosecutor alleges that the minor personally committed the offense, and if the prosecutor alleges one of the circumstances enumerated in the One Strike law, subdivisions (d) or (e) of Section 667.61 of the Penal Code, applies: [¶] (A) Rape, as described in paragraph (2) of subdivision (a) of Section 261 of the Penal Code. [¶] . . . [¶] (D) Forcible lewd and lascivious acts on a child under the age of 14 years, as described in subdivision (b) of Section 288 of the Penal Code. [¶] (E) Forcible penetration by foreign object, as described in subdivision (a) of Section 289 of the Penal Code. [¶] (F) Sodomy or oral copulation in violation of Section 286 or 288a of the Penal Code, by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person."

[12] As is pertinent to appellant's case, former section 707, as amended effective March 8, 2000, provided:

"(a)(1) In any case in which a minor is alleged to be a person described in Section 602(a) by reason of the violation, when he or she was 16 years of age or older, of any criminal statute . . . except those listed in subdivision (b), upon motion of the petitioner made prior to the attachment of jeopardy the court shall cause the probation officer to investigate and submit a report on the behavioral patterns and social history of the minor being considered for a determination of unfitness. Following submission and consideration of the report, and of any other relevant evidence which the petitioner or the minor may wish to submit, the juvenile court may find that the minor is not a fit and proper subject to be dealt with under the juvenile court law . . . . [¶] . . . [¶]

"(b) Subdivision (c) shall be applicable in any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of one of the following offenses: [¶] . . . [¶] (4) Rape with force or violence or threat of great bodily harm. [¶] . . . [¶] (6) Lewd or lascivious act as provided in subdivision (b) of Section 288 of the Penal Code. [¶] (7) Oral copulation by force, violence, duress, menace, or threat of great bodily harm. [¶] (8) Any offense specified in subdivision (a) of Section 289 of the Penal Code. [¶] . . . [¶]

"(c) With regard to a minor alleged to be a person described in Section 602 by reason of the violation, when he or she was 14 years of age or older, of any of the offenses listed in subdivision (b), upon motion of the petitioner made prior to the attachment of jeopardy the court shall cause the probation officer to investigate and submit a report on the behavioral patterns and social history of the minor being considered for a determination of unfitness. Following submission and consideration of the report, and of any other relevant evidence which the petitioner or the minor may wish to submit the minor shall be presumed to be not a fit and proper subject to be dealt with under the juvenile court law unless the juvenile court concludes, based upon evidence, which evidence may be of extenuating or mitigating circumstances, that the minor would be amenable to the care, treatment, and training program available through the facilities of the juvenile court based upon an evaluation of each of the following criteria: [¶] (1) The degree of criminal sophistication exhibited by the minor. [¶] (2) Whether the minor can be rehabilitated prior to the expiration of the juvenile court's

In light of the foregoing, appellant was, at all times alleged in the second amended information that were prior to his 18th birthday, presumptively unfit to be dealt with under the juvenile court law. What is not clear is whether, because Proposition 21 went into effect partway through the timeframe in which the crimes were alleged to have been committed, appellant was *per se* unfit. (See *In re Veronique P.* (2004) 119 Cal.App.4th 195, 198 [14 Cal.Rptr.3d 125].) If appellant was per se unfit to be dealt with under the juvenile court law, then any errors with respect to his posttrial, presentence fitness hearing are immaterial, since the trial court could not have found him fit under any circumstances.

We need not decide whether Proposition 21's amendment to section 602 was intended to apply retroactively, contrary to the general rule that a new or amended statute applies prospectively only unless the Legislature or electorate expresses an intent otherwise (see *In re N.D.* (2008) 167 Cal.App.4th 885, 892 [84 Cal.Rptr.3d 517]), or whether applying it to appellant would run afoul of ex post facto principles (see *Thompson v. Missouri* (1898) 171 U.S. 380, 383 [43 L.Ed. 204, 18 S.Ct. 922]).[13] We conclude that, even assuming appellant was not per se unfit to be dealt with under the juvenile court law, he has not shown grounds for reversal.

---

jurisdiction. [¶] (3) The minor's previous delinquent history. [¶] (4) Success of previous attempts by the juvenile court to rehabilitate the minor. [¶] (5) The circumstances and gravity of the offenses alleged in the petition to have been committed by the minor.

"A determination that the minor is a fit and proper subject to be dealt with under the juvenile court law shall be based on a finding of amenability after consideration of the criteria set forth above, and findings therefor recited in the order as to each of the above criteria that the minor is fit and proper under each and every one of the above criteria. In making a finding of fitness, the court may consider extenuating or mitigating circumstances in evaluating each of the above criteria . . . .

"(d)(1) Except as provided in subdivision (b) of Section 602, the district attorney or other appropriate prosecuting officer may file an accusatory pleading in a court of criminal jurisdiction against any minor 16 years of age or older who is accused of committing an offense enumerated in subdivision (b)."

[13] Unlike the authority cited by respondent (*People v. Williams* (2004) 118 Cal.App.4th 735, 747–749 [13 Cal.Rptr.3d 569]; see also *People v. Quiroz* (2007) 155 Cal.App.4th 1420, 1428–1430 [66 Cal.Rptr.3d 767]), this is not a case involving a course of conduct that constitutes an offense and continues both before and after enactment or amendment of a statute. Indeed, the second amended information dropped the charges of continuous sexual abuse of a child (Pen. Code, § 288.5) that were contained in the original and first amended informations. Each count in the second amended information charged a discrete criminal act that took place somewhere within a broad timeframe and, for all the record tells us, jurors could have found that every offense was committed before the effective date of Proposition 21. (See *People v. Riskin* (2006) 143 Cal.App.4th 234, 244–245 [49 Cal.Rptr.3d 287].) We decline to decide whether respondent's cited authority applies in such circumstances.

## 2. *Due process*

■ "The possibility of transfer from juvenile court to a court of general criminal jurisdiction is a matter of great significance to the juvenile. [Citation.]" (*Breed v. Jones* (1975) 421 U.S. 519, 535 [44 L.Ed.2d 346, 95 S.Ct. 1779]; see *Kent v. United States, supra*, 383 U.S. at p. 556.) In order to afford a juvenile the constitutional protection against multiple trials, a transfer decision generally must be made prior to an adjudicatory hearing. (*Breed, supra*, at pp. 535–536.) Transfer hearings "must measure up to the essentials of due process and fair treatment. [Citation.]" (*Kent, supra*, at p. 562.)

At his fitness hearing, appellant was afforded such hallmarks of due process as the assistance of counsel, the right to review the probation officer's report, and the right to present evidence. (Contrast *Kent v. United States, supra*, 383 U.S. at p. 546.) Although the hearing was not held prior to the waiver of juvenile court jurisdiction, at no time, as we have noted, did appellant object either to the direct filing of charges in adult court, or to the holding of a posttrial fitness hearing. "Whether a case should proceed in juvenile or adult court 'does not involve an issue of subject matter jurisdiction.' [Citation.] There is but one superior court in a county, though it is divided into different departments. [Citation.] Because [appellant] was charged with a felony, the superior court had subject matter jurisdiction." (*In re Harris* (1993) 5 Cal.4th 813, 837 [21 Cal.Rptr.2d 373, 855 P.2d 391].) "[T]he right to trial in the proper department of the superior court may be waived. '[I]t is well settled that a person who is eligible to have his or her case proceed in juvenile court may waive this right either knowingly, or by failing to timely and properly raise the matter.' [Citation.]" (*Id.* at pp. 837–838; see, e.g., *In re Rodney F.* (1988) 203 Cal.App.3d 177, 186 [249 Cal.Rptr. 424]; *Rucker v. Superior Court* (1977) 75 Cal.App.3d 197, 200–201 [141 Cal.Rptr. 900].)

Appellant's failure to timely object, either to the adult court's assumption of jurisdiction or to the holding of a fitness hearing after trial, forfeited his claim on appeal. (See *In re Harris, supra*, 5 Cal.4th at p. 838.) Moreover, we see nothing that undermined the fairness of the hearing appellant was afforded (see *id.* at p. 835) or that suggested the result might have been different had the hearing been held before trial. Accordingly, appellant's due process claim fails.

### 3. *Apprendi*[14]

■ In *Apprendi, supra,* 530 U.S. 466, a New Jersey hate crime statute authorized a 20-year sentence, despite the usual 10-year maximum, if the sentencing judge found the crime was committed for a specified purpose. In invalidating the statutory scheme, the United States Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.)

In *Ring v. Arizona* (2002) 536 U.S. 584 [153 L.Ed.2d 556, 122 S.Ct. 2428], the Supreme Court followed *Apprendi* to invalidate a scheme whereby, after the jury found guilt, the judge determined the presence or absence of aggravating factors required by state law for imposition of the death penalty. The high court explained: "We held that Apprendi's sentence violated his right to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' [Citation.] That right attached not only to Apprendi's weapons offense but also to the 'hate crime' aggravating circumstance . . . . [¶] The dispositive question . . . 'is one not of form, but of effect.' [Citation.] If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt. [Citation.] A defendant may not be 'expose[d] . . . to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone.' [Citations.]" (*Ring*, at p. 602.) The court concluded: "Because Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' [citation], the Sixth Amendment requires that they be found by a jury." (*Ring*, at p. 609.)

In *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*), the standard sentencing range provided for a maximum prison term for the defendant's crime of 53 months. Because the judge found he acted with "deliberate cruelty," however, he was sentenced to more than three years above that maximum, although the facts supporting the finding were neither found by the jury nor admitted by the defendant. In rejecting the state's argument that there was no *Apprendi* violation because the relevant

---

[14] We are aware of no California case that, at the time of appellant's fitness hearing, supported the proposition *Apprendi* required jury findings with respect to juvenile court fitness. Accordingly, we assume, pursuant to *People v. Black* (2007) 41 Cal.4th 799, 811–812 [62 Cal.Rptr.3d 569, 161 P.3d 1130], that appellant did not forfeit this issue by failing to raise it in the trial court.

"statutory maximum" was the 10-year maximum sentence permissible for the class of felonies in which the crime was categorized under Washington's sentencing scheme, the high court stated: "Our precedents make clear . . . that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* [Citations.] In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' [citation], and the judge exceeds his proper authority." (*Blakely*, at pp. 303–304.)

In *United States v. Booker* (2005) 543 U.S. 220 [160 L.Ed.2d 621, 125 S.Ct. 738], the high court found mandatory federal sentencing guidelines indistinguishable from the statute at issue in *Blakely* and so subject to the same holding. (*Booker*, at pp. 233, 243.) *Apprendi* was reaffirmed: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." (*Booker*, at p. 244.)

In *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856], the court applied *Apprendi* and its progeny to California's sentencing scheme. The court stated: "California's determinate sentencing law (DSL) assigns to the trial judge, not to the jury, authority to find the facts that expose a defendant to an elevated 'upper term' sentence. The facts so found are neither inherent in the jury's verdict nor embraced by the defendant's plea, and they need only be established by a preponderance of the evidence, not beyond a reasonable doubt. The question presented is whether the DSL, by placing sentence-elevating factfinding within the judge's province, violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments. We hold that it does. [¶] As this Court's decisions instruct, the Federal Constitution's jury-trial right guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant. [Citations.] . . . In petitioner's case, the jury's verdict alone limited the permissible sentence to 12 years. Additional factfinding by the trial judge, however, yielded an upper term sentence of 16 years . . . . [T]he four-year elevation based on judicial fact-finding denied petitioner his right to a jury trial." (*Cunningham*, at pp. 274–275.)

In *People v. Black, supra*, 41 Cal.4th at page 812, the California Supreme Court found it "important to recognize that, under the [foregoing] line of high court decisions . . . , the constitutional requirement of a jury trial and proof beyond a reasonable doubt applies only to a fact that is 'legally essential to the punishment' [citation], that is, to 'any fact that exposes a defendant to a greater potential sentence' than is authorized by the jury's verdict alone [citation]. 'The Sixth Amendment question, the Court has said, is whether the law *forbids* a judge to increase defendant's sentence *unless* the judge finds facts that the jury did not find (and the offender did not concede).' [Citation.]"

■ We have quoted each of the *Apprendi* line of cases to show why, in our view, their holdings are not violated by a juvenile court fitness finding. "The maximum penalty in defendant's case was established when the jury convicted him of the predicate offenses and sustained the [section 667.61] allegations." (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1229–1230 [65 Cal.Rptr.3d 177].) No additional fact finding by the judge was engaged in or required: The *jury's verdict alone* authorized the sentence imposed.

We recognize that, had appellant been tried as a juvenile, his maximum period of actual physical confinement would have been limited by the jurisdiction of the juvenile court to his attainment of age 25. We also recognize that the findings required under the criteria listed in section 707 with respect to fitness are factual ones. (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 680 & fn. 1 [76 Cal.Rptr.2d 641, 958 P.2d 393].) This simply does not mean, however, that the Sixth Amendment is violated because a judge makes them.

In *People v. Black, supra*, 41 Cal.4th at page 821, the California Supreme Court explained that *Apprendi* and *Blakely* treated the crime, together with the fact that is the prerequisite to eligibility for an increased sentence, as the functional equivalent of a greater crime. Thus, these decisions are intended to protect the historic right to a trial by jury on all elements of an offense, which would be jeopardized if a legislature could label facts affecting the length of the authorized sentence for an offense as something other than elements, thereby eliminating the right to a jury trial thereon.

■ This interpretation was confirmed by the United States Supreme Court in *Oregon v. Ice* (2009) 555 U.S. ___ [172 L.Ed.2d 517, 129 S.Ct. 711], which held that *Apprendi* and its progeny do not apply to a sentencing judge's decision whether to impose consecutive sentences. The court observed that "[o]ur application of *Apprendi*'s rule must honor the 'longstand-

ing common-law practice' in which the rule is rooted. [Citation.] The rule's animating principle is the preservation of the jury's historic role as a bulwark between the State and the accused at the trial for an alleged offense. [Citation.] Guided by that principle, our opinions make clear that the Sixth Amendment does not countenance legislative encroachment on the jury's traditional domain. [Citation.] We accordingly considered whether the finding of a particular fact was understood as within 'the domain of the jury . . . by those who framed the Bill of Rights.' [Citation.] In undertaking this inquiry, we remain cognizant that administration of a discrete criminal justice system is among the basic sovereign prerogatives States retain. [Citation.]" (*Ice*, at p. ___ [129 S.Ct. at p. 717].) After reviewing "[t]he historical record" (*ibid.*), the court went on to state:

"In light of this history, legislative reforms regarding the imposition of multiple sentences do not implicate the core concerns that prompted our decision in *Apprendi*. There is no encroachment here by the judge upon facts historically found by the jury, nor any threat to the jury's domain as a bulwark at trial between the State and the accused . . . .

"It is no answer that, as Ice argues, 'he was "*entitled*" to' concurrent sentences absent the fact findings Oregon law requires. [Citation.] In Ice's view, because 'the Oregon Legislature deviated from tradition' and enacted a statute that hinges consecutive sentences on fact findings, *Apprendi*'s rule must be imported. [Citation.] As we have described, the scope of the constitutional jury right must be informed by the historical role of the jury at common law. [Citation.] It is therefore not the case that, as Ice suggests, the federal constitutional right attaches to every contemporary state-law 'entitlement' to predicate findings.

"For similar reasons, *Cunningham*, upon which Ice heavily relies, does not control his case. As stated earlier, we held in *Cunningham* that the facts permitting imposition of an elevated 'upper term' sentence for a particular crime fell within the jury's province. [Citation.] The assignment of such a finding to the sentencing judge implicates *Apprendi*'s core concern: a legislative attempt to 'remove from the [province of the] jury' the determination of facts that warrant punishment for a specific statutory offense. [Citation.] We had no occasion to consider the appropriate inquiry when no erosion of the jury's traditional role was at stake. *Cunningham* thus does not impede our conclusion that, as *Apprendi*'s core concern is inapplicable to the issue at hand, so too is the Sixth Amendment's restriction on judge-found facts." (*Oregon v. Ice, supra,* 555 U.S. at p. ___ [129 S.Ct. at p. 718].)

■ "Members of [the United States Supreme] Court have warned against 'wooden, unyielding insistence on expanding the *Apprendi* doctrine far beyond its necessary boundaries.' [Citation.] The jury-trial right is best honored through a 'principled rationale' that applies the rule of the *Apprendi* cases 'within the central sphere of their concern.' [Citation.]" (*Oregon v. Ice, supra*, 555 U.S. at p. ___ [129 S.Ct. at p. 719].) Nothing in the *Apprendi* line of cases " 'suggests that they apply to factual determinations that do not serve as the "functional equivalent" of an element of a crime.' [Citation.]" (*People v. Black, supra*, 41 Cal.4th at p. 821.)

■ The factual findings involved in a fitness determination are not the functional equivalent of an element of a crime. "The sole purpose of the fitness hearing is to determine whether the best interest of the minor and of society will be served by retention in the juvenile court or whether the minor should be tried as an adult. [Citation.]" (*People v. Superior Court (Ronald H.)* (1990) 219 Cal.App.3d 1475, 1479 [269 Cal.Rptr. 4].) A transfer hearing "does not directly result in an adjudication of guilt or delinquency" (*People v. Superior Court (Steven S.)* (1981) 119 Cal.App.3d 162, 173 [173 Cal.Rptr. 788]), and the question of a minor's amenability to treatment within the juvenile court system is concerned with the child's prospects for rehabilitation, not the degree of his or her criminal culpability (see *People v. Macias* (1997) 16 Cal.4th 739, 746–747 [66 Cal.Rptr.2d 659, 941 P.2d 838]). A finding that a minor is not amenable to treatment in the juvenile system "does not increase the maximum penalty one can receive if punished according to the facts as reflected in the jury verdict alone." (*People v. Ferris* (2005) 130 Cal.App.4th 773, 780 [30 Cal.Rptr.3d 426] [rejecting claim that, under *Apprendi*, insanity must be treated as element of offense charged].) Moreover, even assuming juveniles have indeed historically been afforded the right to trial by jury on allegations they committed a crime (see *In re Javier A.* (1984) 159 Cal.App.3d 913, 928–949 [206 Cal.Rptr. 386]), we are aware of no historical practice extending that right to a fitness determination.

■ The constitutional concerns expressed in *Apprendi* and its progeny were satisfied in the present case by the jury's finding, beyond a reasonable doubt, of those facts legally essential to the punishment imposed, viz., that appellant committed the offenses. Appellant's sentence was fully authorized by the jury verdict; the statutory provision for judicial factfinding with respect to amenability to treatment in the juvenile court system is not "a legislative attempt to 'remove from the [province of the] jury' the determination of facts that warrant punishment for a specific statutory offense . . . . [A]s *Apprendi*'s core concern is inapplicable to the issue at hand, so too is the Sixth Amendment's restriction on judge-found facts." (*Oregon v. Ice, supra*, 555 U.S. at p. ___ [129 S.Ct. at p. 718].)

## DISPOSITION

The judgment is affirmed.

Vartabedian, J., and Cornell, J., concurred.

A petition for a rehearing was denied September 22, 2009, and appellant's petition for review by the Supreme Court was denied December 17, 2009, S176852. Baxter, J., did not participate therein.