Filed 5/19/22; Certified for Publication 6/6/22 (order attached)

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| D.Z., | C093008 |
| Plaintiff and Respondent, | (Super. Ct. No. PC20200447) |
| v. | |
| L.B. et al., | |
| Defendants and Appellants. | |

SUMMARY OF THE APPEAL

L.B. and M.S. appeal from an order granting Dr. D.Z. a civil harassment restraining order pursuant to Code of Civil Procedure section 527.6. (Given the initials of the parties, we will use first and last name initials to refer to them, except when referring to both D.Z. and T.Z. together, when we will refer to them as the Z.s and when referring to both L.B. and M.S. we will refer to them as the S.s.)

1

The order prohibits L.B. from engaging in a range of conduct that would either harass or increase L.B.'s chances to harass D.Z. and his wife, T.Z.  The restraining order also prohibits M.S., who was not identified as a respondent in D.Z.'s petition for a restraining order, from "intentionally caus[ing] debris of any kind, including manure, to go on the [Z.s'] property."

L.B. and M.S. argue their due process rights were violated when the court issued the order.  They argue L.B.'s rights were violated because the order was issued after a hearing at which D.Z.'s witnesses appeared via video conference, but L.B. only appeared by telephone.  They argue M.S.'s rights were violated because he was not named and given notice as a respondent to the petition, and he did not appear in the action in the trial court.  We find L.B. forfeited her challenge to the order as it applies to her by failing to object to the video conference versus telephone appearances during the hearing in the trial court.  We reverse the trial court's order to the extent it binds M.S.

FACTS AND HISTORY OF THE PROCEEDINGS

August 2019 Stipulated Restraining Order

D.Z. and T.Z. moved to Cool, California in February 2018.  The Z.s' property shares a property line with L.B. and M.S.'s property.  According to D.Z., L.B. has "relentlessly stalked and harassed" the Z.s since the Z.s moved to Cool.

In 2019, T.Z. brought an action against L.B. which resulted in L.B. and the Z.s agreeing to a stipulated restraining order that was not subject to reporting through the California Law Enforcement Telecommunications System (CLETS).

September 3, 2020, Petition for CLETS Restraining Order

On September 3, 2020, D.Z. filed a request for a civil harassment restraining order pursuant to section 527.6 of the Code of Civil Procedure that would be reported through CLETS.  The application identifies L.B., and not M.S., as the person to be restrained, and it identifies T.Z. as an additional person to be protected.

2

According to the application, L.B. had lodged a complaint with D.Z.'s employer consisting of false accusations, reported that a lose dog bothering her livestock belonged to the Z.s when the dog did not belong to them, used a tractor-trailer to push loads of donkey manure onto the Z.s' property, and made loud crashing sounds trying to spook the Z.s' horses while T.Z. was riding the horses. According to the declaration accompanying the application, L.B. also stood peering over their common fence, and laughed and waived as the Z.s and an assistant buried and tried to hold a memorial ceremony of sorts for a horse. The application and accompanying declaration make no mention of harassing behavior by M.S., and they do not include any requests to restrain M.S.'s conduct.

Order to Show Cause Hearing re CLETS Restraining Order

An order to show cause hearing regarding the issuance of a restraining order was held in the Superior Court of El Dorado County on October 15, 2020. According to the minute order issued after the hearing, L.B. and D.Z. were each present with their own counsel and appeared by Zoom. An animal control employee, Mary Hill, testified for D.Z. Before asking the first witness any questions, D.Z.'s counsel said, "just to make a record, I am in my office via Zoom. I've got my client, [D.Z.], in the office with me. I want to make sure that's acceptable with Court and counsel throughout the course of the proceedings?" The court asked L.B.'s attorney if he had "[a]ny problem with that . . . ?" L.B.'s counsel responded, "[n]o problem. My client is sitting here with me as well." But according to L.B.'s opening brief and despite the minute order we have referred to above, while D.Z., Hill, and D.Z.'s counsel appeared via live Zoom video conference and were, therefore, visible to the court, L.B. and her attorney appeared via telephone audio only.

During the hearing, D.Z. and Hill fleshed out some of the details of the incidents between August 2019 and September 3, 2020, in which L.B. allegedly shoved large quantities of donkey manure onto the Z.s' property, made a false report to animal control,

3

made loud noises that could spook horses while the Z.s were riding them, and anonymously and falsely complained to D.Z.'s employer that he had violated a patient's privacy. The anonymous complaint included a copy of a voicemail T.Z. had left with animal control.

D.Z. works as an independent contractor with the Sutter Roseville Medical Group, which does work for and at the Sutter Roseville Medical Center.

L.B. testified that when she spoke to animal control about the dog bothering her donkeys, she did not know to whom it belonged, but she told animal control she had seen it running around the Z.s' property. L.B. stated she did obtain a copy of a voicemail T.Z. left with animal control following the incident with the dog bothering L.B.'s donkeys. At first, L.B. testified that she did not share a copy of the voicemail with D.Z.'s employer, distribute it publicly, or share it with anyone other than M.S. and her attorney. However, eventually she admitted that she shared it with the privacy officer of *her* employer, and that she works for Sutter Health. L.B. claimed she had given the recording to her employer so it could determine if D.Z. had violated a patient's privacy rights, because the recording referenced the treatment of a patient—i.e., L.B. said in the recording, T.Z. mentioned her husband had been the trauma surgeon to operate on someone in a high profile case.

L.B. did not offer evidence to contest D.Z.'s testimony that she had pushed donkey manure onto the Z.s' property, taunted the Z.s as they buried a horse, and made loud noises when the Z.s were on horseback.

M.S. did not appear at the hearing. At the hearing, D.Z. testified that in September 2020, M.S. called risk management at D.Z.'s employer. Based on Hill's testimony, it appears that, after D.Z. filed his petition for a restraining order, M.S. requested that animal control issue a citation to the Z.s for an incident that allegedly occurred almost eight months earlier, in late January 2020.

4

In his closing argument, D.Z.'s counsel requested, "a civil protective restraining order that's going to prevent harassment by [L.B.] or any third party acting on behalf of [L.B.]" He added, "I think as a practical matter we need to include her husband because we received evidence that her husband acting on her behalf has reached out to D.Z.'s employer." L.B.'s counsel argued that the various complaints L.B. had made were within her rights, and that D.Z.'s request for a restraining order was an effort to prevent her from exercising her rights. With respect to the manure, he argued manure can go through wire fences. He made no statements about the ability of the court to observe L.B. or D.Z. during the hearing.

In making its ruling, the court commented that it had some concerns about L.B.'s credibility. It characterized her statements as inaccurate and untruthful based on all the evidence.

The court said, "I'm going to grant a temporary restraining order. I'm going to grant it in favor of the Z.s and against the S.s, both [L.B.] and her husband, [M.S.], and I'm going to —" At this point, L.B.'s counsel interjected that M.S. was not named in the petition. The court responded, "[w]ell, I'm going to include him in the fact that she is not to encourage anybody else to make any harassment, any complaints designed to harass or interfere or disturb the peace of the [Z.s]. I'm going to order that she stay 100 yards away from them, except when she is on her property. That when she is on her property, she is not to do anything that is going to be considered by any right-minded person to be harassment or disturbing the peace, and I'm going to authorize [D.Z.] and his wife to take videos if any of this happens again." The court awarded D.Z. attorney's fees in the amount of $3,500 plus costs, to be stayed provided there are no future court findings that L.B. has continued to engage in similar harassing behavior.

5

<u>The Trial Court Issued a CLETS Restraining Order and L.B. Appealed</u>

After the hearing, the trial court issued a civil harassment restraining order that identifies the protected parties as D.Z. and T.Z. The order identifies the restrained party as L.B. The order expires on October 15, 2023. The order prohibits L.B. from contacting the Z.s in any way, except as agreed upon in the August 1, 2019, stipulation—i.e., M.S. can text or call D.Z. if there is a legitimate property, community, or animal concern. L.B. must also remain 100 yards away from the Z.s, except while on her property. The order prohibits L.B. from owning, possessing, having, receiving, buying, or in any other way getting or trying to get guns or ammunition.

The order includes the following directives:

"[L.B.] is not to encourage any third person, including her husband, to make any harassment, and complaints designed to harass or interfere or disturb the peace of the [Z.s].

"The [Z.s] are authorized to video tape any encounters with the [S.s].

"The [S.s] are not to intentionally cause debris of any kind, including manure, to go on the [Z.s'] property.

"[L.B.] is to turn in to law enforcement or [a] license[d] gun dealer any guns in her possession and to provide the court with proof of turning in said guns or that she does not have access to any guns."

The order was entered into the California Restraining and Protective Order System (CARPOS) through CLETS.

L.B. and M.S. filed a Notice of Appeal on November 4, 2020. They filed their opening brief on December 1, 2021. On January 25, 2022, we provided D.Z. with notice of the fact that he had failed to file a timely respondent's brief, and provided him until February 9, 2022, to file a brief. D.Z. never filed a respondent's brief.

DISCUSSION

I

*Restraining Order Against L.B.*

In their first argument, L.B. and M.S. take the position that L.B.'s constitutional right to procedural due process was violated because the trial court was able to physically observe Hill and D.Z. via videoconference, but it was unable to observe her demeaner because her testimony was presented by a means that provided audio only.  L.B. forfeited this argument by not objecting to the parties' methods of appearance in the trial court.

" '[A]s a general rule, "the failure to object to errors committed at trial relieves the reviewing court of the obligation to consider those errors on appeal." (Fischer et al., Appeals and Writs in Criminal Cases (2d ed. 2000) § 1D.26, pp. 182–183; see also 4 Cal.Jur.3d (1998) Appellate Review, § 175, pp. 233–234.)  This applies to claims based on statutory violations, as well as claims based on violations of fundamental constitutional rights.  [Citations.]  [¶]  The reasons for the rule are these:  " 'In the hurry of the trial many things may be, and are, overlooked which would readily have been rectified had attention been called to them.  The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them.  If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.' " [Citation.]' (*In re Seaton* (2004) 34 Cal.4th 193, 198 [].)" (*People v. McKinnon* (2011) 52 Cal.4th 610, 638; see also *People v. Saunders* (1993) 5 Cal.4th 580, 590; *United States v. Olano* (1993) 507 U.S. 725, 731 [" 'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' *Yakus v. United States*, 321 U.S. 414, 444, [](1944)"].)

7

California courts recognize that claims alleging violations of due process rights can be forfeited by failing to raise them in the trial court. (See, e.g., *People v. Partida* (2005) 37 Cal.4th 428, 436 ["To the extent, if any, that defendant may be understood to argue that due process required exclusion of the evidence for a reason different from his trial objection, that claim is forfeited. Defendant could have apprised, but did not apprise, the trial court of such a claim"]; *People v. Cardona* (2009) 177 Cal.App.4th 516, 523 ["We further conclude appellant forfeited any due process claim by failing either to raise it, or to object to the procedures used, in the trial court"].)

Here, the minute order following the hearing on the order to show cause and the hearing transcript reveal no objections by L.B. or her counsel regarding differences between how the parties, their witnesses, or their counsel appeared before the court. In fact, in the hearing transcript, there is no indication that the court would only be able to hear L.B. and her counsel while she testified. But for L.B.'s representations post-hearing, we would have no reason to believe she was not visible.

Additionally, the minute order from the hearing states that "ALL APPEARANCES [WERE] BY ZOOM," which suggests that L.B. and her counsel were not denied access to the Zoom video conference by the court and D.Z., they simply did not avail themselves of the opportunity to use it and used the telephone/audio-only option instead. L.B. and her counsel had an opportunity to raise an objection about the parties means of testifying. When D.Z.'s counsel elected to make a record that D.Z. was appearing by Zoom, and asked if that was acceptable to the court and counsel, the court asked L.B.'s counsel if he had "[a]ny problem with that," and her counsel responded, "[n]o problem. My client is sitting here with me as well." At this point, L.B.'s counsel could have easily interjected that he had some concerns about the fact that his client would not be physically visible.

If L.B. and her counsel lacked immediate access to the technology to appear by video, they could have made a request on the record for a continuance, "which the court

8

shall grant on a showing of good cause," under Code of Civil Procedure section 527.6, subdivision (p), in order to allow them additional time to obtain access to and figure out how to operate the equipment they would need to appear using the Zoom video conference feature. Instead, L.B.'s counsel said they had "[n]o problem" with how D.Z. appeared at the hearing and raised no problems with how L.B. appeared. Indeed, they did not even note for the record that she was not visible.

L.B. and her counsel had ample opportunity to raise concerns about L.B.'s method of appearing in the trial court and failed to make a timely objection. Having failed to object in a timely matter, they have forfeited their right to raise the issue here. As such, we deny L.B. and M.S.'s request to reverse the restraining order as it applies to L.B.

II

*Order Against M.S.*

In their second argument, L.B. and M.S. maintain that the restraining order binding M.S.'s conduct must be reversed because he was deprived of proper notice. We agree that, to the extent the restraining order controls M.S.'s conduct, it must be reversed.

" 'We review procedural due process claims de novo because "the ultimate determination of procedural fairness amounts to a question of law." ' (*In re Jonathan V.* (2018) 19 Cal.App.5th 236, 241 [].)" (*People v. Marrero* (2021) 60 Cal.App.5th 896, 911.)

As a preliminary matter, we note that the restraining order neither prohibits the range of conduct that M.S. and L.B. suggest it prohibits nor sweeps M.S. into all of its prohibitions as suggested in the opening brief. For example, contrary to the text of the appellant's opening brief, the order does not expressly prohibit either party from stalking the Z.s. And, while it does prohibit L.B., as the identified restrained party, from possessing any guns, it does not prohibit M.S. from possessing them. The restraining order only contains one term that expressly limits M.S.'s conduct regardless of the level

9

of L.B.'s participation in or encouragement of that conduct. That term appears on the attachment to the form in which the court input its own language. The court wrote, "[t]he [S.s] are not to intentionally cause debris of any kind, including manure, to go on the [Z.s'] property." This sentence is the part of the order we address here.

Code of Civil Procedure section 527.6, subdivision (a), allows "[a] person who has suffered harassment" as defined to "seek a temporary restraining order and an order after hearing prohibiting harassment . . . ." A temporary restraining order may be granted with or without notice on the day the petitioner submits his or her petition. (See Code Civ. Proc., § 527.6, subds. (d) & (e).) The temporary restraining order, "shall remain in effect, at the court's discretion, for a period not to exceed 21 days, or, if the court extends the time for hearing" for good cause, "not to exceed 25 days, unless otherwise modified or terminated by the court." (Code Civ. Proc., § 527.6, subd. (f).) However, "[w]thin 21 days, or, if good cause appears to the court, 25 days from the date that a petition for a temporary order is granted or denied, a hearing shall be held on the petition. If a request for a temporary order is not made, the hearing shall be held within 21 days, or, if good cause appears to the court, 25 days, from the date that the petition is filed." Absent exceptions not applicable here, "the respondent shall be personally served with a copy of the petition, temporary restraining order, if any, and notice of hearing of the petition . . . at least five days before the hearing" on the petition. (Code Civ. Proc., § 527.6, subd. (m).) The notice must, "notify the respondent that if the respondent does not attend the hearing, the court may make orders against the respondent that could last up to five years." (Code Civ. Proc., § 527.6, subd. (n).)

"[A]lthough the procedures set forth in" Code of Civil Procedure, section 527.6, "are expedited, they contain certain important due process safeguards. Most notably, a person charged with harassment is given a full opportunity to present his or her case, with the judge required to receive relevant testimony and to find the existence of harassment by 'clear and convincing' proof of a 'course of conduct' that actually and reasonably

10

caused substantial emotional distress, had 'no legitimate purpose,' and was not a 'constitutionally protected activity' " before a court issues a restraining order that exceeds the length of the temporary order that provides protection while the parties ready their cases for a hearing.  (*Schraer v. Berkeley Property Owners' Ass'n* (1989) 207 Cal.App.3d 719, 730-731.)  Thus, "[a]lthough an initial temporary restraining order may be obtained ex parte on affidavit, the statute requires a more formal procedure for obtaining what approximates a permanent injunction.  [¶]  This more formal procedure is required by due process." (*Id.* at p. 732.)

Here, M.S. was not identified as a party to be restrained in D.Z.'s petition, and the content of the petition and accompanying declaration gave no indication that (a) M.S.'s behavior would be at issue at the hearing, or (b) that the hearing would result in an order expressly prohibiting certain actions on his part.  While the order might not identify M.S. may as *the* "Restrained Person," and the prohibition it places on his conduct is seemingly minor, as worded, the order is still a formal order of which M.S. might run afoul, independent of any action or influence of his wife.  The result is that, in the future, should it be alleged that M.S. has intentionally caused "*debris of any kind*"—not just piles of donkey manure—"to go onto the [Z.s'] property" he will face potentially harsher consequences than if the order did not exist.  (See Pen. Code, §§ 166, subd (a)(4) [misdemeanor contempt defined to include "[w]illful disobedience of the terms, as written, of a . . . court order"];  273.6, subd. (a) ["[a]ny intentional and knowing violation . . . of an order issued pursuant to Section 527.6 . . . of the Code of Civil Procedure . . . is a misdemeanor punishable by a fine of not more than one thousand dollars ($1,000), or by imprisonment in a county jail for not more than one year, or by both that fine and imprisonment"].)  This was a violation of M.S.'s right to due process.

To the extent the trial court has ordered M.S. "not to intentionally cause debris of any kind, including manure, to go on the [Z.s'] property" it must be reversed.

11

DISPOSITION

We affirm the trial court's order as it applies to L.B. and reverse it as it applies to M.S. We remand to the trial court and direct it to amend the restraining order consistent with this decision. Each party to bear their own costs on appeal. (Cal. Rules of Court, rule 8.278.)

_____
HULL, J.

We concur:

_____
BLEASE, Acting P. J.

_____
RENNER, J.

Filed 6/6/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| D.Z., | C093008 |
| Plaintiff and Respondent, | (Super. Ct. No. PC20200447) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| L.B. et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of El Dorado County, Daniel B. Proud, Judge. Affirmed and reversed.

Wagner Jones Helsley PC, Jay Aukai Christofferson and Amber N. Les for Defendants and Appellants.

No appearance for Plaintiff and Respondent.

1

THE COURT:

The opinion in the above-entitled matter filed on May 19, 2022, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


_____
BLEASE, Acting P. J.


_____
HULL, J.


_____
RENNER, J.

2