Filed 3/2/23  P. v. DePolo CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D080557 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD290277) |
| MIKE ANTHONY DEPOLO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed.

Patrick Morgan Ford for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

Mike Anthony DePolo pled guilty to one count of misdemeanor assault.  On behalf of the victim, Anthony L., the People sought restitution from DePolo.  At the restitution hearing, counsel for DePolo moved for a continuance after Anthony testified about his losses.  The trial court denied

the motion for a continuance and ordered DePolo to pay $47,575 in direct victim restitution. DePolo now appeals from the restitution order. He argues that the denial of the continuance violated his due process rights.

As a threshold matter, we find that DePolo forfeited his right to appeal the restitution order on due process grounds by failing to assert any due process claim in the trial court. Even if the claim were not forfeited, however, we would find that the denial of the continuance did not render the proceedings so fundamentally unfair as to deprive DePolo of his due process rights. Accordingly, we affirm the trial court's restitution order.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2020, DePolo tackled Anthony L., sending him backwards down a flight of 14 concrete stairs. Along with other more minor injuries, the assault left Anthony with two dislocated fingers and damage to his lower back. Although Anthony had preexisting back injuries before his encounter with DePolo, the assault exacerbated these injuries and forced him to "relearn how to use [his] back muscles."

In May 2021, the District Attorney for the County of San Diego filed an information charging DePolo with a single count of assault by means likely to produce great bodily injury in violation of Penal Code section 245, subdivision (a)(4).

In March 2022, Depolo pled guilty to the charge as a misdemeanor. The trial court sentenced DePolo to one year of probation. At some point before the May 2022 restitution hearing, DePolo paid Anthony $15,000 in restitution.

At the May 2022 restitution hearing, Anthony sought restitution in the amount of $79,575, mostly in lost wages. Anthony testified that in the months leading up to the assault he had steady employment as "a vessel

assistance and rescue captain as well as a charter boat captain and brokerage delivery captain." As a result of the injuries he sustained during the assault, Anthony was unable to work for a "minimum of four months."

Aside from Anthony's own testimony, the only corroborating evidence submitted to the trial court to support the claimed amount of lost wages was several Excel spreadsheets that tabulated his projected earnings for the period he alleged to be unable to work. All of the data contained within these spreadsheets had been inputted by Anthony himself.

After Anthony was excused as a witness, defense counsel moved for a continuance of "a few weeks" or "a month" or "whatever it takes" so that Anthony could provide the trial court with bank statements and/or a tax return that would verify his claim of lost wages. Defense counsel acknowledged that although the bank statements could not definitively indicate whether Anthony lost work, these records could show "if he really went back to work earlier [than he claimed]."

After an extensive discussion with counsel, the trial court denied defense counsel's motion for a continuance. The trial court concluded that there was insufficient cause to question the credibility of Anthony's testimony and the cash-based nature of some of his work would mitigate the evidentiary value of his bank statements.

Before announcing the final restitution order, the trial court ruled that it would not award the $17,000 portion of Anthony's claim attributable to two lost contracts for a family charter to La Paz and a vessel delivery to Seattle. Subtracting DePolo's earlier restitution payment of $15,000 to Anthony from the remaining total, the trial court's final restitution order amounted to $47,575, to be paid in full by March 1, 2023.

## DISCUSSION

DePolo argues that the denial of his motion for a continuance at the restitution hearing violated his due process rights. We disagree. First, DePolo forfeited his right to appeal the restitution order on due process grounds by failing to assert a due process claim in the trial court. Second, even if the issue were preserved, the denial of a continuance did not render the restitution hearing so fundamentally unfair as to violate DePolo's due process rights.

## I

"California courts recognize that claims alleging violations of due process rights can be forfeited by failing to raise them in the trial court." (*D.Z. v. L.B.* (2022) 79 Cal.App.5th 625, 632; *People v. Cardona* (2009) 177 Cal.App.4th 516, 523 ["We further conclude appellant forfeited any due process claim by failing either to raise it, or to object to the procedures used, in the trial court."].) In some circumstances, however, our Supreme Court has suggested that "[t]o the extent any constitutional claim is merely a gloss on [an] objection raised at trial, it is preserved." (*People v. Riggs* (2008) 44 Cal.4th 248, 292; see also *People v. Partida* (2005) 37 Cal.4th 428, 434 ["Thus, the requirement of a specific objection serves important purposes. But, to further these purposes, the requirement must be interpreted reasonably, not formalistically."].)

There is no indication from the record that DePolo's motion for a continuance was explicitly or implicitly grounded on concerns of due process. Defense counsel argued that Anthony's testimony relating to lost wages was not credible. The request for a continuance was couched solely as a means to collect evidence that defense counsel speculated might be useful to impeach Anthony. At no point did defense counsel suggest that denial of the motion

4

for a continuance would violate DePolo's due process rights, deprive him of notice or an opportunity to be heard, or render the proceedings fundamentally unfair. As a result, DePolo has forfeited the claim that his due process rights were violated.

II

Even if DePolo's due process claim were not forfeited, we would still conclude that he has failed to establish a due process violation. "In deciding whether the denial of a continuance was so arbitrary as to violate due process, the reviewing court looks to the circumstances of each case, 'particularly in the reasons presented to the trial judge at the time the request [was] denied.' " (*People v. Courts* (1985) 37 Cal.3d 784, 791, internal quotation marks omitted.) Whether couched as a due process claim or otherwise, the standard of review for a denial of a continuance request is abuse of discretion. (*People v. Doolin* (2009) 45 Cal.4th 390, 450 ["A reviewing court considers the circumstances of each case and the reasons presented for the request to determine whether a trial court's denial of a continuance was so arbitrary as to deny due process. [Citation.] Absent a showing of an abuse of discretion and prejudice, the trial court's denial does not warrant reversal."]; *People v. Johnson* (1970) 5 Cal.App.3d 851, 859 ["The determination as to whether a defendant has affirmatively demonstrated that justice requires a continuance is a factual matter and in the absence of a clear abuse of discretion of the trial court, its determination will not be disturbed on appeal."].) "The party challenging a ruling on a continuance bears the burden of establishing an abuse of discretion, and an order denying a continuance is seldom successfully attacked." (*People v. Beames* (2007) 40 Cal.4th 907, 920 (*Beames*).)

5

A trial court is required to grant a continuance only "upon a showing of good cause" and has broad discretion to determine whether such cause exists. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037 (*Jenkins*); Pen. Code, § 1050, subd. (e).)  Any showing of good cause must be supported by "a demonstration that counsel and the defendant have prepared for trial with due diligence." (*Jenkins*, at p. 1037.)

As a condition of probation, "[t]he court shall provide for restitution in proper cases.  The restitution order shall be fully enforceable as a civil judgement forthwith and in accordance with Section 1202.4 of the Penal Code." (Pen. Code, § 1203.1, subd. (a)(3).)  Penal Code section 1202.4, subdivision (f), authorizes the court to award direct victim restitution "based on the amount of loss claimed by the victim or victims or any other showing to the court."  "Once the victim has made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim."  (*People v. Prosser* (2007) 157 Cal.App.4th 682, 691 (*Prosser*).)  Generally, the victim's testimony is sufficient to fulfill the People's prima facie burden to show the extent of economic loss.  (See *People v. Grandpierre* (2021) 66 Cal.App.5th 111, 115 ["A victim's statement of economic loss is prima facie evidence of loss."]; *People v. Millard* (2009) 175 Cal.App.4th 7, 26 ["[A] prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss."]; see also *People v. Kelly* (2020) 59 Cal.App.5th 1172, 1183 (*Kelly*) ["A victim's loss statement submitted to probation may be sufficient to support a prima facie showing of loss."]; *Prosser*, at p. 690 ["[I]t is well settled that 'statements by the victims of the crimes about the value of the property stolen constitute prima facie evidence of value for purposes of restitution.' " (internal quotation marks

omitted)].)  Indeed, "the standard of evidence at a restitution hearing does not necessarily require a crime victim to produce detailed billing records, receipts, or business invoices." (*Kelly*, at p. 1183; see also *People v. Goulart* (1990) 224 Cal.App.3d 71, 82–84 [holding that a victim's rational estimate of economic loss may satisfy the People's prima facie burden to establish a claim for restitution.].)

"The scope of a criminal defendant's due process rights at a hearing to determine the amount of restitution is very limited." (*People v. Cain* (2000) 82 Cal.App.4th 81, 86.)  In this context, due process is satisfied where the criminal defendant is "given notice of the amount sought and a hearing to contest that amount." (*People v. Thygesen* (1999) 69 Cal.App.4th 988, 993; see Pen. Code, § 1202.4, subd. (f)(1) ["The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution."].)

The record here establishes no violation of these basic due process rights.  As to notice, DePolo does not contend that he lacked notice of the amount of restitution claimed by Anthony.  The record indicates that the prosecution provided DePolo with available documentation that had "been turned over in discovery to the defense for quite some time" before the restitution hearing, including invoices and contracts with names listed. DePolo's contention that "[d]efense counsel had been unaware prior to the hearing that the victim would not be presenting any documentation supporting the amount of his claimed losses" does not establish a due process violation.  As a matter of settled law, beyond making a prima facie showing of economic loss through Anthony's testimony, the People had no further burden to corroborate the restitution claim; instead, DePolo carried the burden of affirmatively challenging the veracity of Anthony's claim.  (*Kelly*, *supra*, 59

7

Cal.App.5th at p. 1183; *Prosser*, *supra*, 157 Cal.App.4th at p. 691.) Despite having the burden "to demonstrate that the amount of the loss is other than that claimed by the victim" (*Prosser*, at p. 691), DePolo apparently did not seek out any evidence or request further production of documents that would confirm or contradict Anthony's claim before the hearing.

There was also no violation of DePolo's due process right to a hearing. DePolo had a restitution hearing at which he was represented by counsel and permitted to contest the restitution figure. At the hearing, defense counsel had the opportunity to, and did in fact, thoroughly cross-examine the victim claiming restitution. Defense counsel also made arguments to the trial court regarding the victim's credibility and the appropriate amount of restitution. Moreover, DePolo has not argued that he was prevented in any way from preparing to dispute the restitution claim before the hearing. Thus, DePolo was afforded his due process rights to notice and hearing.

Finally, we conclude that the trial court's denial of a continuance did not render the proceedings so fundamentally unfair as to violate due process. "[N]ot every denial of a request for more time can be said to violate due process, even if the party seeking the continuance thereby fails to offer evidence." (*Beames*, *supra*, 40 Cal.4th at p. 921.) The trial court ultimately determined that a continuance was not warranted because there was insufficient cause to question the credibility of Anthony's testimony, and the requested records would not definitely resolve whether he suffered the losses he claimed. Moreover, DePolo failed to demonstrate that he exercised due diligence to prepare for the hearing by requesting these records in advance. (*Jenkins*, *supra*, 22 Cal.4th at p. 1037.) In light of its broad discretion to evaluate what constitutes the good cause necessary to grant a continuance

(*ibid.*), the trial court's ruling was not an abuse of discretion and did not violate DePolo's due process rights.

DISPOSITION

The restitution order is affirmed.



BUCHANAN, J.

WE CONCUR:


McCONNELL, P. J.


DO, J.

9