Filed 3/21/25

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>            v.<br><br>NINH XUAN NGUYEN et al.,<br><br>    Defendants and Defendants. | G062427<br><br>(Super. Ct. No. C-69210)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Gary S. Paer, Judge. Affirmed in part, reversed in part, and remanded for resentencing.

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant Nguyen.

Sally Patrone, under appointment by the Court of Appeal, for Defendant and Appellant Ly.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General,

---

[*] Pursuant to California Rules of Court, rule 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I.A. of the Facts and Procedural Background section, and part II.A. of the Discussion section.

Christopher P. Beesley, James M. Toohey, Warren J. Williams, Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

In 1985, defendant Hung Ly (age 19) and Dat Phan (age 17) were dining with two young women at a restaurant. Two men at a nearby table were flirting with the women. Ly was offended and spoke to Phan, who made a phone call. Defendant Ninh Xuan Nguyen (age 21) arrived with a handgun. Ly and the young women went outside. Nguyen, Phan, and a third man opened fire within the crowded restaurant. As a result of the ambush, two people were killed, and four others were injured.

In 1989, a jury convicted defendants of two murders, four attempted murders, and a conspiracy to commit murder. The jury found true related firearm and multiple murder special circumstance allegations. The trial court imposed determinate terms as to the four attempted murders (Ly 10 years, Nguyen 12 years). The court imposed consecutive life sentences without the possibility of parole (LWOP) as to the two murders.

In 2022, defendants filed Penal Code section 1172.6 petitions (formerly 1170.95).[1] The People conceded the four attempted murder counts should be vacated because the jury had been instructed on the natural and probable consequences doctrine as to those four counts.

 In 2023, the trial court vacated the attempted murder convictions and redesignated them as assault with firearm convictions. (See § 1172.6, subd. (e) ["The petitioner's conviction *shall* be redesignated as the target offense . . . for resentencing purposes"], italics added.) When resentencing, the court imposed lower determinate terms as to the four assault with firearm convictions (Ly 6 years, Nguyen 6 years), but left in

---

[1] Assembly Bill No. 200 (Reg. Sess. 2021–2022) renumbered section 1170.95 as section 1172.6. (See Stats. 2022, ch. 58, § 10.) For clarity, we will refer only to section 1172.6 in this opinion. All subsequent undesignated statutory references are to the Penal Code.

place the LWOP sentences as to the two murder convictions.

In the unpublished portion of this opinion, defendants claim the court erred by redesignating the attempted murder convictions as assault with a firearm convictions, primarily arguing a due process violation (lack of notice). But Ly and Nguyen's claims regarding the redesignated counts are forfeited on appeal. In any event, the claims fail on their merits.

In the published portion of this opinion, defendants claim the court did not appear to realize it had the discretion to impose a sentence of life in prison *with* the possibility of parole as to the murders. We agree. But these claims are also forfeited on appeal.

Nonetheless, in the interests of justice, and out of an abundance of caution, we shall remand for resentencing. (See § 1260 [an appellate court "may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances"].)

Thus, we affirm in part, reverse in part, and remand for resentencing. The trial court's orders that vacated the attempted murder convictions and redesignated them as assault with firearm convictions are affirmed; the court's orders that imposed new sentences are reversed.

On remand, Ly and Nguyen may invite the trial court to strike the special circumstance allegations. (See *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 297–298 [a court may dismiss special circumstances if the murders were committed before June 6, 1990].) At the new resentencing hearings, the court will have the discretion to either grant or deny those requests based on the current state of the law (§ 1385), and then address the remainder of defendants' sentences. (See *People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425 ["the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant"].)

# I.

## FACTS AND PROCEDURAL BACKGROUND

*A. Facts*

The facts are directly quoted from this court's 1991 unpublished opinion (defendant Nguyen is referred to by his first name Ninh):

"Just after midnight on November 17, 1985, Ly and Phan were dining and drinking at Pho My Nguyen Restaurant in Garden Grove with two young ladies, Ha Nguyen (no relation to Ninh) and Thu 'Jennifer' Dang, along with Ha's young brother, Giang Nguyen. The restaurant was a popular night spot in the Vietnamese community and was full.

"Ha and Jennifer noticed two men at another table who were flirting with them in an offensive manner. The men were giving them looks of a distinctively sexual nature and one of them made a suggestive comment to Jennifer. According to Ha, such attention is extremely insulting in the Vietnamese culture to the *males* in whose company the females are sitting. One of these men made a suggestive comment to Jennifer.

"Jennifer complained about the men to Ha, seated next to her and then Ly looked in the same direction as Jennifer was pointing for Ha. Ly and Phan spoke between themselves. The atmosphere became tense and Ly left the table briefly. After his return, Giang heard him cursing the manager of the restaurant, Phuong, who had forced Ly to pay for their food and drink. Phan then borrowed a quarter from Ly to use the pay phone. Upon his return, Ly asked, 'Did you get ahold [*sic*] of them?'

"At an adjacent table, Tony Pham and Trung Phan (no relation to Dat Phan) were eating. Ly came over to their table and leaned towards them, telling them quietly that they should leave because there was a problem.

They noticed the tension in the air and decided to take his advice.

"Just before they left they noticed Ninh arrive, wearing a black leather jacket that had a suspicious bulge under it. As Ninh passed their table, Tony saw the grip of a handgun peeking out from under the jacket. Ninh spoke with Ly and Phan in hushed tones and then two of them walked to the back of the restaurant. The girls became scared that something was going to happen and decided to leave. As they left, Ha overheard Phan, Ly and Ninh talking and someone saying the words, '38, 48 and 45.'

"Ha, Jennifer, Giang and Ly got into Ly's hatchback and started to drive away, but another car drove up alongside, and the driver spoke with Ly. Ly said, 'They're waiting inside.' The car then drove up to the restaurant, and Ly drove his car a few feet further before parking and turning up the radio volume.

"Like Ly, Tony and Trung left the restaurant but waited outside to see what would happen. They could see inside the place and observed three men now seated at the table vacated by Ly and the girls. The three men included Ninh and Phan. Suddenly, the three stood up, walked over to the table occupied by the flirting man, pulled out guns and opened fire. Two men were thrown backwards from the blasts as the other patrons dove for the floor. The three gunmen ran out of the restaurant, laughing. Ninh, the last of the three to leave, fired off a few rounds into the ceiling as he went out the door. The three ran to a waiting Nissan 280Z sportscar and zoomed away.

"Meanwhile, back in Ly's car, Jennifer noticed Ly staring at the restaurant's door through his rearview mirror. She heard three 'pops' and saw some men running through the parking lot. At that, Ly took off. The police arrived at the restaurant almost immediately. Quy Nguyen, the man who had flirted with Jennifer, and Min Luu, the man seated behind

Quy, were dead. Nguyen had died from bullets entering his left shoulder and left neck, severing the cervical spinal cord. Both bullets were from a .45 caliber semi-automatic pistol. Luu died from a single, .25 caliber gunshot wound to the stomach area. Four bystanders were also injured by bullet wounds: Loe Van Tran, Phuc Nhi Phuong, Tam Van Huynh, and Rigoberto Nava. Seventeen casings from .25, .38, and .45 caliber bullets were found throughout the area, and the fingerprints of Phan and Ly were found on the table where they had been sitting.

"Ly dropped Ha and Giang off at their home and then insisted Jennifer accompany him to a meeting. She reluctantly agreed and was taken to a second floor office where about a dozen Vietnamese men were gathered. Ninh and Phan were among them. All the men were discussing the shooting at the restaurant and directing their comments to Ly. In particular, Phan pointed two fingers at a man's throat and said how 'good it felt to shoot that guy in the neck.'

"The next day, Ninh threatened Trung with death if he said anything to anyone about the shooting. Later, Khan Nguyen and Phan took Trung aside, told him not to say anything to anyone and proceeded to beat him up to impress upon him how serious they were. Sometime thereafter, Ninh talked to Giang and told him to keep quiet about the shooting. He also told him that he had thrown away the guns they had used that night.

"Two days after the shooting, Jennifer saw an article in a newspaper about it. She confronted Ly with the article. He grinned out of the corner of his mouth but said nothing. Subsequently, Jennifer received two different telephone calls threatening her with injury if she talked to anyone or testified against Ly.

"About two years later, Khan Nguyen and Phan were arrested

7

and placed together in a patrol car. Unbeknownst to them, a recording was made of everything they said. They spoke in Vietnamese slang, but in it Khan Nguyen asked Phan why the man *behind* Quy Nguyen was killed. Phan said, 'That's [be]cause the guy in the back is the friend of this guy. Motherf*cker, my bullets did not fly. My bullets hit the target.'

"About the same time, Ly was interrogated by the police. He denied all knowledge of the incident and responded he could not have been involved in the shooting because he was in juvenile hall on that date. All parties stipulated he entered juvenile hall three days *after* the shooting at the restaurant. After he was arrested for the murders, he attempted to escape from custody by jumping from a thirty-foot wall, resulting in a broken ankle, dislocated shoulder and a rapid rearrest.

"At the same time, Ninh was located in Pomona where he was arrested carrying a concealed .38 caliber automatic handgun. The gun was *not* one of those used in the restaurant shooting." (*People v. Nguyen et al.* (Nov. 15, 1991, G009447) [nonpub. opn.].)

*B. Procedural Background*

In July 1988, the People filed an information charging Ly, Phan, Nguyen, and two other men with two counts of first degree murder, four counts of attempted murder, and one count of conspiracy to commit murder.[2] The information also alleged vicarious use of a firearm as to Ly, personal use of a firearm as to Nguyen, and multiple murder special circumstance allegations as to both Ly and Nguyen.

In October 1989, a jury trial began. After about three weeks of

---

[2] Phan and the other unnamed defendants are not a party to this appeal; therefore, the details of their cases will not be further addressed.

testimony, the trial court instructed the jury using the pattern CALJIC instructions. The court instructed the jury on the natural and probable consequences doctrine as to only the attempted murder counts.[3] (See CALJIC No. 3.02.) The court also instructed on lesser included or related offenses: voluntary manslaughter (as a lesser included offense to murder), and assault with a deadly weapon (as a lesser related offense to attempted murder). (See CALJIC No. 17.10.)

In November 1989, the jury found defendants guilty of the charged crimes and found true the alleged enhancements.

In April 1990, both Ly and Nguyen invited the trial court to dismiss the special circumstance findings at their sentencing hearings. (See § 1385, subd. (a).) The court denied the requests. The court imposed determinate terms as to the four attempted murder counts (Ly 10 years, Nguyen 12 years). The court also imposed consecutive LWOP sentences as to one murder count, and concurrent 25 years to life sentences as to the other murder count. The court stayed the defendants' sentences as to the conspiracy count. (§ 654.)

In February 2022, Nguyen filed a section 1172.6 petition seeking to vacate his two murder convictions and four attempted murder convictions, and to be resentenced.

In April 2022, Ly filed a section 1172.6 petition seeking to vacate his murder and attempted murder convictions, and to be resentenced.

---

[3] In 1989, CALJIC No. 3.02 did not require the identification of the target offense. The Supreme Court later held that "when the prosecution relies on the 'natural and probable consequences' doctrine to hold a defendant liable as an aider and abettor, the trial court must, *on its own initiative*, identify and describe for the jury any target offense allegedly aided and abetted by the defendant." (*People v. Prettyman* (1996) 14 Cal.4th 248, 268.)

In July 2022, the trial court held a prima facie hearing as to Ly's petition. The court later filed an order denying Ly's petition as to the murder counts, and issued an order to show cause (OSC) as to the attempted murder counts. Ly appealed from the court's prima facie ruling (as to the murder counts) and his appellate counsel later filed a *Wende* brief on his behalf.

In July 2022, the trial court held a prima facie hearing as to Nguyen's petition. The court later filed an order denying Nguyen's petition as to the murder counts, and issued an OSC as to the attempted murder counts (Nguyen did not appeal from the court's prima facie ruling). The court ordered the People "to lodge a copy of the original trial transcripts."

In November 2022, Nguyen filed a brief in propria persona (hereafter in pro per) in the trial court. Nguyen argued the court committed an instructional error during the 1989 jury trial as to the conspiracy to commit murder charge (count seven).[4]

In December 2022, this court filed an unpublished opinion addressing Ly's *Wende* appeal from the trial court's prima facie ruling: "Here, based on our independent review of the record, we have similarly found no arguable issues. [Citation.] As to the two murder convictions, the absence of instructions on the natural and probable consequences doctrine and/or the felony-murder rule confirm Ly is ineligible for relief under section 1172.6 as a matter of law and the trial court properly denied the petition at the prima facie stage." (*People v. Ly* (Dec. 6, 2022, G061553) [nonpub. opn.].)

In January 2023, Ly filed a motion in pro per requesting a

---

[4] Nguyen essentially repeats this same argument in the instant appeal. But this instructional error claim dating back to the 1989 jury trial is plainly not cognizable. (See *People v. Farfan* (2021) 71 Cal.App.5th 942, 947 [section 1172.6 "does not afford the petitioner a new opportunity to raise claims of trial error"].)

*Franklin* proceeding. (*People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) [a hearing to develop evidence of youth-related factors, which are intended for consideration in a later youth offender parole hearing].)

On March 3, 2023, the trial court held evidentiary hearings regarding Ly and Nguyen's section 1172.6 petitions. The court vacated the attempted murder convictions, redesignated them as assault with firearm convictions, and resentenced the defendants as to only the assault counts (the hearings will be covered in greater detail in the discussion section of this opinion). The court delayed ruling on Ly's pro per motion for a *Franklin* proceeding, awaiting the Supreme Court's decision in *People v. Hardin* (2024) 15 Cal.5th 834.[5]

Ly and Nguyen filed separate appeals from the trial court's orders issued on March 3, 2023.

_____

[5] When an inmate is in prison due to a crime committed when the person was a young adult (18 to 25), that inmate is ordinarily eligible for a youth offender parole hearing starting at their 15th, 20th, or 25th year of incarceration. (§ 3051, subds. (a)–(b).) But inmates serving LWOP sentences are statutorily ineligible for such hearings. (§ 3051, subd. (h).) On March 4, 2024, the Supreme Court held that this unequal treatment does not facially violate the equal protection clause; however, the Court recognized "that young people — even young people who have committed grave offenses — are capable of significant, sometimes transformative, change over the course of their lifetimes." (*People v. Hardin, supra,* 15 Cal.5th at p. 864.)

DISCUSSION

*A. The Redesignated Assault with Firearm Convictions*

Defendants claim the trial court violated their due process rights because they had no notice that the court would redesignate their attempted murder convictions as assault with firearm convictions. We find these claims have been forfeited on appeal because they were not raised in the trial court, and in any event, they fail on their merits. Ly further claims there was insufficient evidence to support his assault with firearm convictions because he was not one of the shooters. We disagree.

We apply a de novo standard of review when considering a defendant's procedural due process claims. (*People v. Marrero* (2021) 60 Cal.App.5th 896, 911.) "When considering a challenge to the sufficiency of the evidence . . . , we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence . . . from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

In this part of the discussion, we will: 1) state relevant principles of law regarding the redesignated convictions; 2) summarize the trial court proceedings; and 3) apply the law to the relevant facts.

*1. Relevant Legal Principles*

"'Notice and an opportunity to be heard are the fundamental hallmarks of due process . . . .'" (*People v. Palacios* (2024) 101 Cal.App.5th 942, 953.) However, procedural due process "'"calls for such procedural protections as the particular situation demands."'" (*People v. Murdock* (2018)

25 Cal.App.5th 429, 435.)

It is a fundamental rule of appellate practice that in order to raise an alleged error on appeal, the issue must first have been raised in the trial court. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 & fn. 2.) If not raised in the trial court, the issue is forfeited on appeal. (*Ibid.*) In a criminal context, "'a "contrary rule would deprive the People of the opportunity to cure the defect at trial and would 'permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal.'"'" (*People v. Robinson* (2024) 99 Cal.App.5th 1345, 1356–1357.)

"California courts recognize that claims alleging violations of due process rights can be forfeited by failing to raise them in the trial court." (*D.Z. v. L.B.* (2022) 79 Cal.App.5th 625, 632; *People v. Cardona* (2009) 177 Cal.App.4th 516, 523 ["appellant forfeited any due process claim by failing either to raise it, or to object to the procedures used, in the trial court"].)

Under the former felony-murder rule, aiders and abettors could be convicted of an unintentional murder if a victim was killed during an underlying felony. (*People v. Arellano* (2024) 16 Cal.5th 457, 470.) And under the former natural and probable consequences doctrine, aiders and abettors could be convicted of an unintended murder (a nontarget offense), if the unintended crime was a reasonably foreseeable result of the intended crime (a target offense). (*Ibid.*)

Effective January 1, 2019, the Legislature narrowed the scope of the felony-murder rule and effectively eliminated the natural and probable consequences doctrine. (§§ 188, 189; see Stats. 2018, ch. 1015, §§ 2, 3.)

The Legislature also later provided that for those "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based

13

solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced." (§ 1172.6, subd. (a), italics added.)

After a trial court finds a prima facie case for relief has been established, and after an "order to show cause has issued, the court shall hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1172.6, subd. (d)(1).)

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).)

"The petitioner's conviction *shall be redesignated* as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, and the target offense was not charged. Any applicable statute of limitations shall not be a bar to the court's redesignation of the offense for this purpose." (§ 1172.6, subd. (e), italics added.)

Subdivision (e) of section 1172.6 does not define a "target offense"

14

and it does not specify the process by which the court should identify that offense. (*People v. Medina* (2009) 46 Cal.4th 913, 920.) "The statute does not define 'underlying felony' or 'target offense,' but . . . the meaning of these terms is clear. An 'underlying felony' refers to the felony underlying a felony-murder theory [citations], and the 'target offense' refers to the [intended] offense the natural and probable consequence of which was murder [citations]." (*People v. Arellano, supra,* 16 Cal.5th at p. 470.)

### 2. Trial Court Proceedings

In July 2022, the trial court held separate prima facie hearings and found both Ly and Nguyen were eligible for prima facie relief under section 1172.6 (but only as to their four attempted murder convictions), and issued OSCs as to those counts.

On March 3, 2023, the trial court held separate evidentiary hearings. The minutes for Ly's case state: "At 09:42 AM, Court and Counsel confer in chambers without court reporter present. [¶] At 10:45 AM, chambers conference concluded." The minutes for Nguyen's case similarly state: "At 09:42 AM, Court and Counsel confer in chambers without court reporter present. [¶] At 10:45 AM, chambers conference concluded."

The court called Ly's case first. His attorney told the court that Ly had waived his right to appear. The court said, "We can summarize what is going on. Basically he received life without parole on Counts 1 and 2, the murder charges. He was also convicted of four counts of attempted murder. [¶] What is the People's position as to those counts?"

The prosecutor responded, "Obviously as to Counts 1 and 2 I think this last summer of 2022 there was a prima facie hearing, and the Court came to the conclusion and said the prime facie had not met [*sic*] . . . .

So those counts still remain. Those are the two murder counts with L-WOP attached to them. [¶] So we are talking about [the] attempted murder counts that are involved in the case. And after exhaustive review of the court transcripts and police reports in this case, I am here with our office saying we cannot proceed on those attempted murder counts."

The following dialogue then took place:

"THE COURT: So you agree that the Petition to vacate the convictions on Counts 3 through 6 should be granted?

"[PROSECUTOR]: Yes, your honor.

"THE COURT: All right. Then we are going to show that the D.A. concedes that relief shall be given on Counts 3 through 6. [¶] What is the Defense position?

"[COUNSEL]: We agree.

"THE COURT: Is there any legal cause why sentence should not be imposed?

"[COUNSEL]: No, your honor.

"THE COURT: Waive arraignment for pronouncement of judgment?

"[COUNSEL]: Time is waived.

"THE COURT: Waive any type of pre-sentence report?

"[COUNSEL]: So waived.

"THE COURT: Request immediate re-sentence?

"[COUNSEL]: Yes, your honor.

"THE COURT: On Counts 3 through 6 the Court is going to redesignate the attempted murders to Section 245(a)(2) assault with firearm. That is going to be on Counts 3, 4, 5, and 6."

The court sentenced Ly to a determinate term of six years as to

the assault with firearm convictions. The court selected the midterm for one of the counts (three years), and consecutive terms of one-third the midterm (one year) as to the three remaining counts (further details regarding resentencing will be covered later in this discussion).[6]

After completing Ly's case, the court then called Nguyen's case. Nguyen's attorney informed the court that Nguyen was "appearing via video from state prison." The court noted, "There are a couple things" that needed to be addressed, and that Nguyen "had filed a [pro per] motion for relief as to Counts 1 and 2 the murder charges." The court asked, "What is the People's position on that?" The prosecutor said, "With respect to Counts 1 and 2, my understanding is that this summer in 2022 there was a prima facie hearing, and it was determined that Petitioner did not make a prima facie case for re-sentencing on Counts 1 and 2."[7]

The court said, "Are you aware of the Court of Appeal decision on those counts?" Nguyen's counsel noted, "Just for the record, your Honor, I have not filed an appeal on those counts because the rest of the Petition was still ongoing. The Petition that Mr. Ly filed was relevant only as to the finding, the denial of the prima facie on his case. But I understand the Court's position and the ruling is based on the same logic." The court said,

---

[6] Defendants also claim the trial court abused its discretion by imposing the midterm rather than the low term, but we need not reach these claims given our remand for resentencing. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893 [under the full resentencing rule, a trial court is authorized to modify every aspect of a defendant's sentence upon resentencing].)

[7] "Collateral estoppel applies in criminal proceedings . . . ." (*People v. Meredith* (1992) 11 Cal.App.4th 1548, 1555; see also *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341; ["Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings"].)

"Well, the Court of Appeal addressed this, and they basically concluded that he is not entitled to relief. They affirmed my prior decision at least as to both Defendants. It's the same case." The court continued that "it's already been addressed by a higher court. So it was the Court's intent to also deny relief as to Counts 1 and 2 because this has already been decided and reviewed by an appellate court as to the co-Defendant."[8]

After a discussion about exhibits, the court said, "Let's talk about re-sentencing on the attempted murder charges. What is the D.A.'s position on that?" The prosecutor stated, "We cannot proceed on the attempt murders to prove beyond a reasonable doubt intent to kill. So we are asking for a re-sentencing to a 245 violation of the Penal Code." The court asked, "Mr. Chen, your position on this? You believe he should be re-sentenced?" Nguyen's counsel responded, "Yes. My position is the Court should issue the Order to Show Cause and re-sentence Mr. Nguyen on Counts 3, 4, 5, and 6."

"THE COURT: As to Counts 3, 4, 5, and 6 the D.A. concedes that Nguyen qualifies for re-sentencing. I'm going to go ahead and reclassify Counts 3, 4, 5, and 6 to a section 245(a)(2) of the Penal Code assault with firearm. [¶] Also I don't know if we addressed this earlier, but shouldn't the attempted murders be dismissed?

"[COUNSEL]: Yes.

"THE COURT: The original counts?

---

[8] Nguyen also argues the trial court erred by using our "*Wende* decision in Ly to deny" him relief as to his two murder convictions. We disagree. The trial court made its prima facie rulings in July 2022, which denied relief as to both Ly and Nguyen's two murder convictions. This court's *Wende* decision, which affirmed that ruling as to Ly, was filed in December of that year. (See *People v. Ly*, *supra*, G061553.) That is, our December 2022 unpublished opinion as to Ly, could not have possibly affected the trial court's earlier July 2022 prima facie ruling as to Nguyen.

"[COUNSEL]: Yes.

"THE COURT: That is what we'll do. Actually dismiss is the wrong word. Counts 3 through 6 get redesignated as a 245(a)(2)."

The court then sentenced Nguyen to a determinate term of six years as to the assault with firearm convictions (further details regarding resentencing will be covered later in this discussion).

*3. Application and Analysis*

At their respective hearings, Ly and Nguyen did not object to the trial court's redesignation of their attempted murder convictions as assault with firearm convictions. Thus, under long-standing principles of appellate practice, defendants' due process (lack of notice) claims have been forfeited for purposes of appeal. (See *People v. Cardona, supra,* 177 Cal.App.4th at p. 523 ["appellant forfeited any due process claim by failing either to raise it, or to object to the procedures used, in the trial court"].) In any event, the defendants' due process claims fail on their merits.

The 1988 information charged defendants with four attempted murder counts generically (without reference to the theory of liability), and no target offense was separately charged in the information. Therefore, once the People conceded defendants were entitled to relief under section 1172.6 and they could not proceed, the trial court was *required* to redesignate each of those convictions as the target offense prior to resentencing. (See § 1172.6, subd. (e) ["The petitioner's conviction *shall be redesignated as the target offense* . . . for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, and the target offense was not charged"], italics added.)

Procedural due process calls for notice and opportunity to be

19

heard. (See *People v. Palacios, supra,* 101 Cal.App.5th at p. 953.) Here, prior to the March 2023 hearings, defendants were presumably on notice of the provisions of section 1172.6. (See *Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032, 1073 ["all parties were presumably aware" of "the statute's provisions"].) And again, neither defendant asked the court for a further opportunity to be heard, and neither defendant objected to the redesignation of the attempted murder convictions as assault with firearm convictions.

Additionally, defendants have also not established how they were prejudiced by the trial court's alleged due process violations. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 407 ["Even if the claim of error has been preserved by an objection in the trial court, appellant cannot prevail without establishing that she was prejudiced by the alleged error"].)

That is, defendants have not suggested what crimes the trial court should have designated as the target offenses (instead of assault with a firearm). Presumably, defendants would argue the court should have selected crimes that would have resulted in lower determinate terms. But any further lowering of the determinate terms would have no practical effect. (See § 669 ["Whenever a person is committed to prison on a life sentence which is ordered to run consecutive to any determinate term of imprisonment, *the determinate term of imprisonment shall be served first*"], italics added.) In other words, regardless of what crimes the trial court chose to redesignate as the target offenses, *any* alternative crimes would have resulted in *no* effective

reduction to the length of the defendants' prison terms.[9]

In sum, even if we were to address defendants' due process claims on their merits, we would not find a violation by the trial court.

Defendants argue that the case of *People v. Del Rio* (2023) 94 Cal.App.5th 47 (*Del Rio*), compels a different result. We disagree.

In 1977, the People "filed an information charging Del Rio with three counts of murder." (*Del Rio, supra,* 94 Cal.App.5th at p. 51.) "In 1978, a jury convicted Del Rio of two counts of first degree murder, and the trial court . . . sentenced him to two concurrent, indeterminate life terms in prison." (*Ibid.*) In 2019, Del Rio filed a section 1172.6 petition, and the trial court issued an OSC. "At the evidentiary hearing, the People submitted because they did not have a trial transcript. Based on this representation that the People did not have any admissible evidence, the court stated, 'I'm going to vacate the conviction, and therefore, that means Mr. Del Rio will be released.' The People then asked the court to reimpose any remaining charges and resentence on those offenses. But they acknowledged that they were 'kind of in a quandary because the Court has to resentence on something that [*sic*] we don't have any evidence in front of us to do so.'" (*Ibid.*)

"The trial court . . . vacated the now 45-year-old murder convictions and indicated it would sentence Del Rio on a robbery conviction. Del Rio's counsel objected on the grounds that there was no evidence Del Rio

---

[9] Defendants also claim that they received ineffective assistance because their counsels failed to object to the court's redesignation of their attempted murder convictions as assault with firearm convictions. For similar reasons concerning a lack of prejudice, we need not address those claims any further. (See *Strickland v. Washington* (1984) 466 U.S. 668, 697 ["If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed"].)

was ever charged with robbery, no evidence suggesting the theory behind the murder conviction, and no reliable evidence that Del Rio was guilty of robbery. The court proceeded with redesignating robbery as the basis for conviction, then resentenced Del Rio to a middle term of three years, with credit for time served, and imposed a parole term of up to two years." (*Del Rio, supra*, 94 Cal.App.5th at p. 52.)

On appeal, Del Rio claimed that "the trial court violated his due process rights because he had no notice the court might take this action. He further argue[d] the robbery conviction [was] not supported by substantial evidence in the record." (*Del Rio, supra* 94 Cal.App.5th at pp. 50–51.) The Court of Appeal agreed: "We agree the lack of notice and substantial evidence supporting the robbery conviction warrant reversal." (*Id.* at p. 51.) The Court of Appeal noted: "The People acknowledged in advance of the hearing that Del Rio was entitled to relief because they did not have evidence to prove beyond a reasonable doubt that he was ineligible for resentencing. But they did not state an intention to redesignate any other offenses." (*Id.* at p. 55.) Further, there was no transcript of the 1978 trial. "This leaves no evidence in the record on appeal, substantial or otherwise, supporting Del Rio's robbery conviction. Accordingly, we must reverse." (*Id.* at p. 59.)

What occurred in *Del Rio* is distinguishable in a number of ways from what occurred in this case. To begin with, Del Rio's counsel objected to the trial court's redesignation of one of his two murder convictions, thereby preserving the issue for appellate review. (See *Del Rio, supra*, 94 Cal.App.5th at p. 52.) In this case, neither of the defendants' counsels objected to the redesignation of the defendants' four attempted murder convictions, which has resulted in the forfeiture of these issues on appeal.

Additionally, in *Del Rio*, the trial court's decision to redesignate

22

one of the murder convictions as a robbery conviction appears to have happened on the spur of the moment during the hearing. (See *Del Rio, supra* 94 Cal.App.5th at pp. 50–51.) That is, the court's ruling appeared to come as a complete surprise to the parties. (*Ibid*.) In this case, although the target offense was not identified in the 1989 jury instructions, the record shows that there was an hour-long chambers conference prior to the start of the hearing. While the conference was apparently not transcribed, it seems to be a reasonable presumption that the proposed disposition of Ly's and Nguyen's cases (the redesignation of the attempted murders as assault with firearm offenses) would have been discussed. And again, there was no objection by either of defendants' counsels during the course of their respective hearings.

Moving on to Ly's separate claim that there was not substantial evidence to support the redesignated assault with firearm convictions, the *Del Rio* case is also distinguishable. In *Del Rio*, the prosecution did not have the 1978 trial transcript, so there was no evidence to support the redesignated robbery conviction. (See *Del Rio, supra* 94 Cal.App.5th at p. 51.) Here, the 1989 trial transcript is part of the record on appeal, and it was apparently lodged by the People as an exhibit to the section 1172.6 hearings.

The Penal Code provides that it is a crime to commit "an assault upon the person of another with a firearm." (§ 245, subd. (a)(2).) "The elements of assault with a firearm . . . include (1) an assault, which requires the intent to commit a battery, and (2) the foreseeable consequence of which is the infliction of great bodily injury upon the subject of the assault." (*People v. Cook* (2001) 91 Cal.App.4th 910, 920.) "A battery is any willful and unlawful use of force or violence upon the person of another." (§ 242.)

An "assault with a firearm is a general intent crime, not a specific intent crime. [Citations.] Thus, a defendant need not intend to

commit violence against a specific victim to be guilty of an assault." (*People v. Lee* (1994) 28 Cal.App.4th 1724, 1736.) "'"The intent to cause any particular injury [citation], to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary." [Citation.] The pivotal question is whether the defendant intended to commit an act likely to result in such physical force, not whether he or she intended a specific harm. [Citation.] Because the nature of the assaultive conduct itself contemplates physical force or "injury," a general intent to attempt to commit the violence is sufficient to establish the crime.'" (*Id.* at pp. 1736–1737.)

In this case, there was evidence showing that after the two men had flirted with the two women, Ly then directly aided and abetted in the subsequent shooting. Ly spoke to Phan (one of the shooters), who then made a phone call. And upon his return to the table, Ly asked Phan, "'Did you get ahold [*sic*] of them?'" And just prior to the shooting, Ly spoke with Nguyen (another shooter), who had arrived in the restaurant with a firearm, and Ly then waited just outside the restaurant with the two young women to see what was happening as the shooting took place.

Based on the shooting occurring in a crowded restaurant, and viewing the evidence in the light most favorable to the judgment, we find there is a reasonable inference that Ly intended to aid and abet the shooters, and he knew this would likely result in injuries to at least four bystanders. (See *People v. Lee*, *supra*, 28 Cal.App.4th at pp. 1736–1737.) Thus, we find substantial evidence to support Ly's four assault with firearm convictions.

To reiterate and conclude as to the four assault with firearm convictions, we find defendants' due process claims have been forfeited on appeal. We further find that Ly's separate claim regarding the sufficiency of the evidence is not meritorious.

*B. The Resentencing as to the Two Murder Convictions*

Defendants claim the trial court abused its discretion by not appearing to realize the scope of its discretion to impose a sentence of life in prison *with* the possibility of parole as to their two murder convictions. We agree. And although this issue has been forfeited on appeal, we will order the trial court to conduct another resentencing hearing on remand out of an abundance of caution and in the interest of justice.

"Discretionary sentencing decisions . . . are reviewed for an abuse of discretion." (*People v. Salazar* (2023) 15 Cal.5th 416, 428, fn. 8.) "A court acting while unaware of the full scope of its discretion is deemed to have abused it." (*People v. McDavid* (2024) 15 Cal.5th 1015, 1023.)

In this part of the discussion, we shall: 1) state the relevant principles of law regarding resentencing, 2) summarize the trial court proceedings, and 3) analyze the facts as applied to the law.

*1. Relevant Legal Principles*

"The crime [of special circumstance multiple murder] carries a mandatory sentence of LWOP or death (§ 190.2, subd. (a)), which are the harshest penalties available under our penal system and are reserved for crimes of the most heinous nature." (*In re Williams* (2020) 57 Cal.App.5th 427, 436.) "Whenever special circumstances as enumerated in Section 190.2 are alleged and the trier of fact finds the defendant guilty of first degree murder, the trier of fact shall also make a special finding on the truth of each alleged special circumstance." (§ 190.4.)

"The judge or magistrate may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of

justice, order an action to be dismissed." [10] (§ 1385, subd. (a).) In addition to dismissing an entire "action," the authority of a judge or a magistrate to dismiss under section 1385 also applies to sentencing enhancements. (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 490–491.)

"If the court has the authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in the furtherance of justice in compliance with subdivision (a)." (§ 1385, subd. (b)(1).)

However, section 1385.1 provides: "Notwithstanding Section 1385 or any other provision of law, a judge shall not strike or dismiss any special circumstance which is admitted by a plea of guilty or nolo contendere or is found by a jury or court as provided in Sections 190.1 to 190.5, inclusive." (See *People v. Garcia* (2022) 83 Cal.App.5th 240, 257 [under section 1385.1, a "trial court . . . has no authority or discretion to strike a special circumstance finding in order to reduce a defendant's punishment"].)

Section 1385.1 was passed as part of Proposition 115, otherwise known as the "'Crime Victims Justice Reform Act.'" (*Tapia v. Superior Court, supra,* 53 Cal.3d at p. 286.) "Proposition 115 took effect on June 6, 1990, the day after the voters approved the measure." (*Ibid.*) The statute operates prospectively; therefore, a trial court *may* dismiss a special circumstance allegation attached to any murders committed before June 6, 1990, the date that section 1385.1 became effective. (*Ibid.*)

"Under section 1385, a defendant 'ha[s] the right to "invite the

---

[10] Section 1385 does not permit a defendant to make "a motion" to dismiss a sentencing enhancement, but a defendant generally has the right to *invite the court* to dismiss sentencing enhancements in the furtherance of justice. (See *People v. Carmony* (2004) 33 Cal.4th 367, 375; see also *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.)

court to exercise its power by an application to strike a count or allegation of an accusatory pleading" . . . .' [Citation.] However, 'any failure on the part of a defendant to invite the court to dismiss under section 1385 . . . waives or forfeits his right to raise the issue on appeal.'" (*People v. Coleman* (2024) 98 Cal.App.5th 709, 724.) Nevertheless, an appellate court may, within the scope of its discretion, reach an issue not properly preserved for review, unless the issue involves the admission or exclusion of evidence. (Evid. Code, §§ 353, 354; *People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6.)

Under the full resentencing rule, a trial court is authorized to modify every aspect of a defendant's sentence upon resentencing. (*People v. Buycks, supra,* 5 Cal.5th t p. 893.) "Resentencing is not limited to 'just the portion [of the sentence] subjected to recall.' [Citation.] Rather, 'the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant.'" (*People v. Trent* (2023) 96 Cal.App.5th 33, 44.)

Generally, "a remand for a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances." (*People v. Navarro* (2007) 40 Cal.4th 668, 681.)

Under the current version of the statute: "Notwithstanding any other law, the court *shall* dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1), italics added.)

### 2. Trial Court Proceedings

At Ly's March 2023 hearing, after the trial court had vacated the four attempted murders, and redesignated them as assault with firearm convictions, the court noted that Ly "filed his own *Franklin* motion . . . . It's the Court's position tentatively that a *Franklin* hearing . . . applies to

determinate sentences when someone has the opportunity to be placed on parole supervision. [¶] However, Mr. Ly has been convicted, sentenced, and affirmed on appeal on Counts 1 and 2, which is life without parole. So he is *never* going to see a parole board based on the current law. [¶] So it's the Court's tentative position that the *Franklin* hearing and motion should be denied because it really only applies for people that are going to meet the parole board in the future and want to supplement their background information for the parole board." (Italics added.)

The court then went to sentencing: "The new total is six years State Prison on Counts 3 through 6 determinate sentence only. Count 1, 2, and 7 the original sentence to remain. Life without parole on Counts 1 and 2." After striking the firearm enhancements, the following took place:

"THE COURT: "Does the D.A. concur with the re-sentence?

"[PROSECUTOR]: Yes.

"THE COURT: Counsel, are you satisfied with the sentence?

"[COUNSEL]: Yes, your honor.

"THE COURT: So basically the determinate sentence goes down for your client from 10 years to 6. He has a truck load of CTS against that, but his problem is he is still life without parole on Counts 1 and 2." The court then concluded Ly's evidentiary hearing.

At Nguyen's March 2023 hearing, after confirming that the trial court had received a package from the prison entered as an exhibit, Nguyen's counsel stated: "I understand that the Court is not inclined to do anything further. I will tell Mr. Nguyen that it appears his best avenue for further relief on Counts 1 and 2 would be a direct appeal for clemency from the Governor based on him having to his credit attempted to do everything he can to better himself, including basically graduating from college while in

prison. But I understand that the Court does not feel at the time that it's either inclined *or has the authority* to do anything in terms of re-sentencing on Counts 1 and 2."

The trial court then resentenced as to only the assault with firearm convictions. The court noted that Nguyen's determinate sentence went from 12 years "down to six years. He's been re-sentenced as to those counts only." The court then concluded Nguyen's evidentiary hearing.

### 3. Application and Analysis

Prior to (and during) the March 2023 hearings, neither Ly nor Nguyen invited the trial court to dismiss the multiple murder special circumstance enhancements. Therefore, this issue has been forfeited for purposes of appeal. (See *People v. Coleman, supra,* 98 Cal.App.5th at p. 724.)

However, in the interests of justice, and out of an abundance of caution, we have decided to overlook defendants' forfeiture, and remand the matter for resentencing. (See *People v. Williams, supra,* 17 Cal.4th at pp. 161–162, fn. 6 [an appellate court may reach an issue not properly preserved for review; see also § 1260 [an appellate court may remand "for such further proceedings as may be just under the circumstances"].)[11]

There is nothing in the record of the March 2023 hearings (or anywhere else), indicating that the trial court was aware that it could have granted such relief under section 1385. That is, it does not appear that the court was aware that because the murders occurred before June 6, 1990, the

_____

[11] Defendants also claim that they received ineffective assistance during the resentencing portion of the March 2023 hearings. But given our disposition, which effectively grants them the relief they seek, these claims are moot. (*In re D.P.* (2023) 14 Cal.5th 266, 277 [a claim is moot when an appellate court cannot provide further relief].)

court had the discretion to strike the special circumstance enhancements, and then impose life sentences *with* the possibility of parole. (See *Tapia v. Superior Court, supra,* 53 Cal. 3d at p. 298; see also *People v. McDavid, supra,* 15 Cal.5th at p. 1023 ["A court acting while unaware of the full scope of its discretion is deemed to have abused it"].) Indeed, this seems somewhat understandable, given that for about 35 years, the rule has been that a court *cannot* strike a special circumstance enhancement. (See § 1385.1)

At the new resentencing hearing on remand, defendants may invite the court to dismiss their special circumstance enhancements. The court will have the discretion to either grant or deny those requests based on current provisions of law, including section 1385. The court can then impose what it deems to be appropriate sentences as to each defendant, "provided that the new sentence, if any, is not greater than the initial sentence." (§ 1172.6, subd. (d)(1); see also *People v. Valenzuela, supra,* 7 Cal.5th at pp. 424–425 ["the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant"].)[12]

---

[12] We, of course, take no position on how the trial court should exercise its sentencing discretion on remand.

III.

DISPOSITION

The trial court's orders that vacated the defendants' attempted murder convictions and redesignated them as assault with firearm convictions are affirmed. The court's orders that imposed new sentences are reversed. On remand, defendants may invite the court to strike the special circumstance allegations. The court is ordered to resentence defendants consistent with current laws. (See, e.g., § 1385.)

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

DELANEY, J.